**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE**

| | | |
|---|---|---|
| DWAYNE COCHRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. 2:17-CV-44 |
| TOWN OF JONESBOROUGH, | ) | REEVES/CORKER |
| TENNESSEE; and JONATHAN | ) | |
| PEACE, in his individual capacity, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION

On March 17, 2016, Plaintiff Dwayne Cochran loaded several tons of dirt into his dump truck and drove to his property along a local two-lane road. In order to dump the dirt onto his property, Cochran positioned his truck so that it was perpendicular to the road and blocking one of the lanes, like so:



[D. 18, at 2]. After dumping the dirt, Cochran attempted to leave, but the truck's back wheels were stuck. The truck was still blocking one lane of traffic. Cochran called his father for assistance. One man directed traffic around the truck while the other attempted to get it unstuck.

At some point while this was going on, Defendant Jonathan Peace, a Jonesborough police officer, came upon the scene. The parties dispute how Officer Peace ended up there, though all agree that he was responding to a 911 call. According to Peace, there was nothing unusual about the call. According to Cochran, the call was placed by his neighbor, Derrick Sumner. Cochran and Sumner had not had the most neighborly relationship, and Cochran claims that Sumner called the police to get him into trouble. Either way, Peace ended up at the scene.

Cochran asked if he could retrieve his pickup truck that was a short distance away, and Peace agreed. When Cochran returned, he and his father chained the dump truck to the pickup and pulled the dump truck out of its rut. Once both vehicles had been moved out of the road, Peace issued Cochran a citation for Blocking the Road, in violation of Tenn. Code Ann. § 55-8-158. When Cochran did not sign the citation, Peace arrested him and placed him, handcuffed, in the backseat of the cruiser. Cochran asserts that the handcuffs were too tight and that Peace ignored his cries to loosen them.

By this point, more officers had shown up. Peace needed help; he had been on the job for only a year, and he didn't know exactly which law allowed him to arrest Cochran. After scrolling through state statutes on his personal digital assistant and consulting the other officers, Peace charged Cochran with Failure to Appear on a Citation, in violation of Tenn. Code Ann. § 40-7-118. Peace then transported Cochran to the Washington County Detention Center for booking.

2

Once at the jail, Cochran again complained about the handcuffs, and requested medical attention. Peace then replaced Cochran's cuffs with looser ones, and requested an examination by medical staff. Meanwhile, Peace swore out an affidavit of complaint for Failure to Appear on a Citation, and Cochran was booked on that charge. Later that day, however, Peace's superior told him that Cochran should have been booked on Blocking the Road instead. Officer Peace then returned to the jail and swore out an identical affidavit with the correct charge. The next day, at Peace's request, the judge dismissed the Failure to Appear charge.

In June 2016, Cochran went to trial on his Blocking the Road charge in Washington County General Sessions Court, but the judge dismissed the case after hearing Peace's testimony.

In March 2017, Cochran filed suit against Officer Jonathan Peace, Derrick Sumner, Mayor Kelly Wolfe, and the Town of Jonesborough, bringing claims under the First and Fourth Amendments, and Tennessee state law. Essentially, Cochran claims that his arrest by Peace was part of a larger scheme of political retaliation involving the other defendants. The claims against Sumner and Mayor Wolfe have since been dismissed with prejudice [D. 52].

Now before the Court is Officer Peace's motion for summary judgment [D. 16], seeking qualified immunity on all counts brought against him: (1) unlawful arrest, (2) excessive force, and (3) malicious prosecution, all in violation of the Fourth Amendment; (4) retaliatory arrest, in violation of the First Amendment; and (5) false arrest/false imprisonment, (6) assault and battery, and (7) malicious prosecution, in violation of Tennessee state law. For the reasons that follow, Officer Peace's motion will be granted, and this action will be dismissed.

# I

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper only if the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether this burden is satisfied, the Court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994). But, as the Supreme Court has noted, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Murray v. Harriman City*, 2010 WL 546590, at *3 (E.D. Tenn. Feb. 10, 2010) (Phillips, J.) (*quoting Scott v. Harris,* 550 U.S. 372, 380 (2007)).

Once the movant has satisfied its initial burden, the other party must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847. In doing so, the non-moving party may not rely on the pleadings alone, but must instead point to "specific facts" in the record that create a genuine issue for trial. *Metiva*, 31 F.3d at 378-79. In ruling on a motion for summary judgment, the Court need not scour the record "to establish that it is bereft of a genuine issue of fact." *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). But the Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter, and any genuine disputes of fact that do exist must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 249; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014). Ultimately, "[t]he critical inquiry for a district court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (*citing Anderson,* 477 U.S. at 251-52).

## II

Cochran brings seven claims against Peace, and Peace contends that qualified immunity shields him from liability for all of them.[1] The purpose of qualified immunity is to protect officers from suit except when they violate a plaintiff's clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). To determine whether a state officer is protected by qualified immunity, the Court applies a two-part test. Under the step usually taken first, the Court must view the facts in the light most favorable to the plaintiff and decide whether the defendant violated the plaintiff's constitutional rights. *Id.* at 201. If so, the Court must determine whether those rights were clearly established at the time of the defendant's alleged misconduct. *Id.* A "clearly-established" right is "one [that] has been decided by the Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged violation occurred." *Grindstaff v. Mathes*, 2016 WL 6497293, at *5 (E.D. Tenn. Nov. 2, 2016) (Phillips, J.) (*citing Wegener v. City of Covington*, 933

---

[1] The defense of qualified immunity may properly be applied to all of Cochran's claims, including those arising under Tennessee law. "In *Youngblood v. Clepper,* the Court of Appeals of Tennessee made clear that the same defense of qualified immunity that is available to police officers in causes of action under § 1983 is also available in causes of action under Tennessee state law. 856 S.W.2d 405, 407-08 (Tenn. Ct. App. 1993). The analysis of qualified immunity under § 1983 and Tennessee state law is coextensive." *Willis v. Neal*, 2006 WL 1129388, at *2 (E.D. Tenn. Apr. 24, 2006) (Mattice, J.), *aff'd*, 247 F. App'x 738 (6th Cir. 2007). *See also Rogers v. Gooding*, 84 F. App'x 473, 477 (6th Cir. 2003) (affirming the application of a qualified immunity defense to plaintiff's assault and battery claim).

5

F.2d 390, 392 (6th Cir. 1991)). The clearly-established law must be "'particularized' to the facts of the case" so that officials have fair warning of what the law prohibits. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (*citing Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). At this step, the plaintiff must show that it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted, in light of what the officer actually knew at the time. *Id.* at 202. If the plaintiff meets this burden, then the officer is not protected by qualified immunity.

## A

Cochran first alleges unlawful arrest under the Fourth Amendment (Count 1) and Tennessee law (Count 5). "It is beyond debate that an arrest made without probable cause violates the Fourth Amendment." *Smith v. City of Wyoming*, 821 F.3d 697, 714 (6th Cir. 2016) (*citing Lyons v. City of Zenia*, 417 F.3d 565, 573 (6th Cir. 2005)). Conversely, "the existence of probable cause forecloses a false arrest claim." *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997) (cleaned up). Probable cause to make an arrest exists "if, at the moment of the arrest, 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.'" *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal citation omitted) (cleaned up). The arresting officer's knowledge depends on the "law of the jurisdiction at the time of the occurrence." *Ingram v. City of Columbus*, 185 F.3d 579, 594 (6th Cir. 1999).

Peace first claims that he had probable cause to cite Cochran for Blocking the Road under Tenn. Code Ann. § 55-8-158, and to arrest him for that offense. Peace further contends that, even if he was mistaken, a reasonable officer in his position would have believed that he had probable cause under the statute, which states as follows:

6

> Upon any highway outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave the vehicle off such part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle of not less than eighteen feet (18') shall be left for the free passage of other vehicles….

Tenn. Code Ann. § 55-8-158(a). Critically, this section does not apply "to the driver of any vehicle that is *disabled* while on the paved or main-traveled portion of a highway in a manner and to an extent that it is impossible to avoid stopping and temporarily leaving that disabled vehicle in such position." *Id.* § 55-8-158(b)(1) (emphasis added).

At trial, the state judge dismissed the charge against Cochran. The parties dispute whether the judge said that there was no probable cause for the arrest, but, in any case, the judge's decision seems to have turned on a statutory interpretation of the term "disabled" under Section 55-8-158(b)(1).[2] And the fact that a state judge determined that Cochran's truck was *actually* "disabled" within the meaning of the statute—and thus, Cochran could not be convicted of the charged offense—is of little consequence in this federal case. For purposes of qualified immunity, it is enough that the officer is reasonable in his belief that probable cause exists, even if this belief turns out to be wrong. *See Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995). Further, probable cause must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989)). Thus, the Court's determination of the probable-cause question is not affected by the state-court judgment.

---

[2] The state-court judgment form notes only that Cochran is "not guilty" and that costs are to be taxed to the prosecutor [D. 29-5, at 3]. But in explaining the decision to prosecute, the Assistant District Attorney General stated: "We decided to let the court determine the meaning of 'disabled.'" [D. 29-7, at 1].

The Court finds that a reasonable officer in Officer Peace's position would believe that he had probable cause to issue Cochran a citation under Section 55-8-158, and to arrest him for that offense. In talking to Cochran, Peace learned that Cochran had intentionally maneuvered his truck perpendicular to the road in order to dump a load of dirt onto his property. It was only *after* Cochran dumped the dirt that the vehicle became stuck. Based on this information, a reasonable officer could conclude that because Cochran acted intentionally in positioning the vehicle so it was blocking the road (at least initially), it was not "*impossible to avoid stopping* and temporary leaving [the] disabled vehicle in such position." Tenn. Code Ann. § 55-8-158(b)(1) (emphasis added). Accordingly, the officer would be reasonable in his belief that the statutory exception for "disabled" vehicles did not apply to the situation then confronting him, and that, consequently, probable cause existed to issue a citation.[3]

Of course, Officer Peace did not cite Cochran under this particular statute. Instead, he issued the citation for Failure to Appear under Tenn. Code Ann. § 40-7-118. But, as both parties acknowledge, a charging error is not itself a constitutional violation, and the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). To hold otherwise would render the Fourth Amendment protections "arbitrarily variable," creating situations where "[an] arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not." *Id.* The Fourth Amendment is not so fickle.

---

[3] The state court employee who reviewed Officer Peace's affidavit of complaint also determined that "there is probable cause to believe that … the defendant committed the offense(s) of violation(s) of TCA Block Lane Traff. (T.C.A. 55-8-158) [*see* D. 29-5, at 2].

Further, it is undisputed that an officer may arrest an individual for refusing to sign a citation, pursuant to Tenn. Code Ann. § 40-7-118(c)(6). But Cochran claims that he did *not* refuse to sign the citation, or that, at the very least, there is a genuine issue of material fact as to this element. Even viewing the facts in the light most favorable to Cochran, the Court cannot ignore the record, which blatantly contradicts Cochran's declaration that "[he] had never verbally told Officer Peace that [he] would not sign the citation." [D. 29-1, at 4]. According to an audio recording of the incident, Peace warned Cochran that he would be arrested if he refused to sign the citation, and Cochran responded, "I ain't signing the frigging thing." [D. 38, at 11; *see* D. 20, Ex. A (11:38:00 to 11:40:30)[4]]. This statement alone would indicate to any reasonable officer that Cochran was refusing to sign the citation, giving the officer probable cause for an arrest. Officer Peace says that he knew he had the authority to arrest Cochran, but either way, Peace had little choice in the matter. As this Court has previously stated, "Refusal to sign a citation *requires* an officer to arrest the offender under Tenn. Code Ann. § 40-7-118(c)(6)." *Murray v. Harriman City*, 2010 WL 546590, at *4 (E.D. Tenn. Feb. 10, 2010) (Phillips, J.) (emphasis added).[5] Based on the record, a genuine dispute does not exist as to this element. Accordingly, the Court does not need to address the parties' remaining argument regarding probable cause to cite Cochran for intentionally, knowingly, or recklessly obstructing the road under Tenn. Code Ann. § 39-17-307.

Cochran has failed to meet his burden in demonstrating that a genuine dispute of material fact exists as to any element of his unlawful arrest or false arrest claims, whether under the Fourth Amendment or Tennessee state law. Because any reasonable officer would believe that he had

---

[4] Exhibit A is a CD-ROM that was filed manually with the Court. It contains a copy of the audio and video recording for the relevant time period from Officer Peace's in-car recording system. The times indicated in citations to Exhibit A refer to the timestamp on the video footage, rather than the precise location within the file.

[5] *Murray* presented a similar factual scenario as this case. In *Murray*, this Court found that "the officers followed Tennessee law and appropriately arrested [the suspect] after he refused to produce identification or sign the citations. Accordingly, defendants are entitled to summary judgment as a matter of law on plaintiffs' claim of unlawful arrest." 2010 WL 546590, at *4.

probable cause to arrest under the circumstances of this case, Peace is entitled to qualified immunity, and his motion for summary judgment will be granted as to Counts 1 and 5.

**B**

Cochran's claims for malicious prosecution under the Fourth Amendment (Count 3) and Tennessee law (Count 7) go hand-in-hand with his claim for retaliatory arrest under the First Amendment (Count 4). In contrast with a false-arrest claim, a court addressing these claims "must consider not only whether the Defendant had probable cause to arrest the Plaintiff but also whether probable cause existed to initiate the criminal proceeding against the Plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 310-11 (6th Cir. 2010) (cleaned up). Because this Court has determined that an officer in Peace's position could reasonably believe that he had probable cause to arrest, Cochran's claims fail as a matter of law. *See Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) ("the existence of probable cause would negate the possibility of liability under a state-law malicious prosecution theory, and therefore under a federal constitutional theory as well"); *Barnes v. Wright*, 449 F.3d 709, 719 (6th Cir. 2006) (*quoting Hartman v. Moore,* 547 U.S. 250, 252 (2006)) (noting that "'want of probable cause must be alleged and proven' by a plaintiff bringing a § 1983 or *Bivens* suit for retaliatory prosecution" under the First Amendment).

Even if this were not the case, lack of probable cause is only one of the elements required to prove a claim for malicious prosecution or retaliatory arrest. To succeed on a malicious-prosecution claim, a plaintiff must also be able to show that the particular defendant "made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 308 (*citing Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)) (cleaned up). The defendant's involvement in the decision "must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). There is simply no evidence in the

record that Officer Peace participated in the investigation after Cochran's arrest, or "pressed for prosecution in any non-neutral or blameworthy way." *Id.* (internal quotation marks omitted).

Cochran's retaliatory-arrest claim also fails on multiple fronts. Aside from lack of probable cause for the arrest, Cochran must also be able to prove that he was arrested in retaliation for expressing disagreement with some state action. *See Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006). In his complaint, Cochran contends that Peace arrested him "based on the retaliatory motives of Mayor Wolfe." [D. 1, at 24]. But even viewing the record in the light most favorable to Cochran, as the Court must, there is simply no evidence to support this contention.[6] At most, the evidence shows that Officer Peace became aware of the "feud" between Cochran and the Town of Jonesborough *after* he made the decision to arrest Cochran for refusing to sign the citation.

Because Cochran has failed to identify specific facts in the record that raise a genuine issue of fact as to any of these claims, Peace is entitled to qualified immunity. Accordingly, his motion for summary judgment will be granted as to Counts 3, 4, and 7.

## C

Finally, Cochran claims that Officer Peace used excessive force in violation of the Fourth Amendment (Count 2), due to the manner in which he was handcuffed. He also alleges a corresponding claim for assault and battery under Tennessee law (Count 6). "Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action." *Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010).

---

[6] It is worth noting that, after conducting some discovery, Cochran informed the Court that he no longer wished to pursue his claim against Mayor Wolfe, and requested that the Court dismiss him as a defendant in this action [D. 50]. Accordingly, the Court granted Mayor Wolfe's motion for summary judgment [D. 21] on February 20, 2018 [D. 52].

The Sixth Circuit has squarely held that "excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment." *Courtright v. City of Battle Creek*, 839 F.3d 513, 519-20 (6th Cir. 2016) (*quoting Baynes v. Cleland*, 799 F.3d 600, 613-14 (6th Cir. 2015)). This right was clearly established for purposes of qualified immunity at the time of Cochran's arrest on March 17, 2016. *See Baynes*, 799 F.3d at 613 (noting that this right was clearly established in the Sixth Circuit "[a]s early as 1993"). "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to identify a genuine issue of material fact that (1) he complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Getz v. Swoap*, 833 F.3d 646, 654 (6th Cir. 2016) (*citing Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)).

The first and third elements of the test are easily satisfied in this case. Peace concedes that Cochran twice complained about the tightness of the handcuffs [D. 18, at 5], and Cochran has provided ample medical documentation of his wrist pain and subsequent carpal tunnel surgery [*see* D. 29-8]. But Peace maintains that he cannot be liable for the use of excessive force because he did not ignore Cochran's complaints that the handcuffs were too tight. He points specifically to the following exchange, which occurred after Peace placed Cochran in the back of the cruiser for the second time, following a pat-down:

> COCHRAN: These things are really uncomfortable. I mean, they're tying into my wrists.
>
> PEACE: Yeah. They're not going to be comfortable. But I checked them to make sure that there wasn't, they weren't too tight.
>
> COCHRAN: They're tighter than crap.
>
> PEACE: Are your hands numb?

12

> COCHRAN: Just head on. Just head on.
>
> PEACE: Okay.

[D. 18, at 5; *see* D. 20, Ex. A (11:47:45 to 11:48:05)]. Officer Peace says that he asked Cochran if his hands were numb because he was trying to determine if the cuffs were too tight, or if Cochran had been sitting on his hands, which could cause similar problems. Peace says that he interpreted Cochran's response to "just head on" as an indication "that he was not too concerned about his handcuffs." [D. 18, at 5].

Cochran fails to address this argument in his response to Peace's motion for summary judgment. But in his declaration, Cochran explains his answer as follows: "I told him just to go on because I knew he wasn't going to do anything and perhaps I would get relief at the Washington County Jail, which I in fact did." [D. 29-1, at 4]. Cochran also says that Peace never checked the cuffs for excessive tightness, and that, prior to the above exchange, he had already been handcuffed in the back of the police vehicle for several minutes.[7] During this period, Cochran says that he was unable to communicate to Officer Peace that the cuffs were too tight.

Nevertheless, it is undisputed that once Cochran voiced his complaint, Officer Peace did *not* ignore it. Rather, he asked Cochran additional questions in order to determine whether the cuffs were cutting off his circulation. But instead of answering Peace's inquiry—and potentially obtaining quicker relief—Cochran simply told him to head on. As Peace states in his reply brief: "Mr. Cochran cannot shut down Officer Peace's inquiry as to the tightness of the handcuffs *and then* sue Officer Peace for 'ignoring' his complaint regarding the tightness of the handcuffs." [D.

---

[7] Cochran says that he was handcuffed in the vehicle for fifteen minutes before Officer Peace opened the door, but the objective evidence in the record shows that the passage of time was closer to five minutes [*see* D. 20, Ex. A (11:40:15) (handcuffed and placed in police vehicle); (11:45:55) (removed from vehicle for pat-down)]. Either way, the Court finds that a period of up to fifteen minutes in the vehicle would not alter the Court's analysis or conclusion.

38, at 3]. The Court agrees. At most, Officer Peace was negligent in failing to physically check the handcuffs himself after Cochran complained, but mere negligence does not amount to a constitutional violation. *Daniel v. Williams*, 474 U.S. 327, 328 (1986). Even viewing the facts in the light most favorable to Cochran, the Court finds that Cochran has not offered sufficient evidence to raise a genuine issue of material fact as to whether Officer Peace ignored his complaints. Because this element is necessary to state a claim for excessive force and the corresponding claim for assault and battery, Peace's motion for summary judgment will be granted as to Counts 2 and 6.

### III

Cochran's § 1983 claims (Counts 1, 3, and 4) have also been alleged against the Town of Jonesborough. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a local governmental unit may be liable for civil damages in a § 1983 action when the execution of a governmental policy or the toleration of a custom causes the deprivation of a constitutionally protected right. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (*citing Monell*, 436 U.S. at 691). But the Supreme Court has held that *Monell* does *not* authorize an award of damages against a municipality when a jury has already concluded that no individual officer inflicted an underlying constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). *See also Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993) ("The point in *Heller* was that the city could not be held responsible for a constitutional violation which could have occurred but did not."). In granting Officer Peace's motion for summary judgment on these counts, the Court has determined that no reasonable jury could find that Peace violated Cochran's constitutional rights. Thus, even though the Town of Jonesborough has not moved for summary judgment, the Court is compelled to dismiss Counts 1, 3, and 4 as against it, as well.

## IV

Cochran's sole remaining claim (Count 8) is a state-law negligence claim against the Town of Jonesborough, brought pursuant to the Tennessee Governmental Tort Liability Act (TGTLA). District courts may decline to exercise supplemental jurisdiction over state-law claims when they raise novel or complex issues of state law or, in exceptional circumstances, when there are compelling reasons for declining supplemental jurisdiction. 28 U.S.C. § 1367(c). The TGTLA provides in pertinent part that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter…." Tenn. Code Ann. § 29-20-307. Because the Tennessee legislature has expressed a clear preference that TGTLA claims be handled by state courts, this Court declines to exercise supplemental jurisdiction over Cochran's remaining state-law claim. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

## V

Based on the foregoing, Officer Jonathan Peace's motion for summary judgment [D. 16] is **GRANTED**, and Counts 1 through 7 are hereby **DISMISSED with prejudice**. Count 8 as against the Town of Jonesborough is **DISMISSED** *without* **prejudice**. And with that, this case is **DISMISSED.**

**IT IS SO ORDERED**.

_____
**UNITED STATES DISTRICT JUDGE**